# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Therrell Smith,**

Plaintiff,

v.

**Overseas Korean Cultural Heritage Foundation AKA The Overseas Korean Cultural Heritage Foundation, USA,**

Defendant.

Case No. 1:17-cv-00598 (TNM)

## MEMORANDUM OPINION

Plaintiff Therrell Smith filed a three-count complaint in Superior Court of the District of Columbia against defendant Overseas Korean Cultural Heritage Foundation, also known as the Overseas Korean Cultural Heritage Foundation, USA, seeking damages related to the Defendant's construction project on a property next to Plaintiff's residence. The Defendant removed the action to this Court and filed a motion to dismiss based on Federal Rules of Civil Procedure 12(b)(1), 12(b)(4), and 12(b)(5). Def.'s Mot. to Dismiss 6-7. This motion is ripe for adjudication, as are two other motions: Plaintiff's Motion to Strike an affidavit filed in support of the Defendant's Notice of Removal, and the Defendant's Motion to Stay Discovery pending a ruling on its Motion to Dismiss. Upon consideration of the pleadings, relevant law, and related legal memoranda in opposition and in support, the Defendant's Motion to Dismiss is DENIED and the Plaintiff's Motion to Strike Affidavit is DENIED. The Defendant's Motion to Stay Discovery is accordingly DENIED as moot.

# I.      Background

Plaintiff is a 100-year old resident of 14 Logan Circle in Washington, D.C. Compl. ¶ 2. The Defendant, a South Korean cultural foundation, is the owner of the property next to Plaintiff's and has been engaged in a construction project to open the property as a museum. *Id.* ¶ 4-5, Pl.'s Memo. of Opposing P. & A. to Def.'s Mot. to Dismiss Ex. 3. Plaintiff filed suit in Superior Court for the District of Columbia and delivered to Defendant's registered agent a copy of the complaint and summons. Compl. 1. Plaintiff claims that the construction has resulted in damage to Plaintiff's property, harmed Plaintiff's physical health, and caused her to incur certain professional fees which she alleges should be reimbursed by the Defendant. Compl. ¶¶ 20, 28, 33, 42; Def.'s Notice of Removal ¶ 1.

The Defendant removed the action to this Court[1] and has filed two motions: a Motion to Dismiss on the bases that the Defendant was not properly served under the Foreign Sovereign Immunities Act ("FSIA") and Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5) and that this Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); and a Motion to Stay Discovery until the Motion to Dismiss is decided. *See* Def.'s Notice of Removal; Def.'s Mot. to Dismiss; Def.'s Opp. and Mot. to Stay Discovery Pending Ruling on Def.'s Mot. to Dismiss. Plaintiff has filed a Motion to Strike an affidavit submitted with the Defendant's Motion to Dismiss. Pl.'s Mot. to Strike Affidavit of Soo-Dong O in Support of Def.'s Notice of Removal. All three motions, which are ripe, are considered below.

---

[1] Plaintiff does not contest the propriety of removal. *See generally* 28 U.S.C. §§ 1441(d), 1446(b); Pl.'s Opp'n to Def.'s Mot. to Dismiss; Pl.'s Mot. to Strike Affidavit; Pl.'s Opp'n to Def.'s Mot. to Stay Discovery.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5), a complaint may be dismissed, respectively, for "insufficient process" or "insufficient service of process." A motion under Rule 12(b)(4) is "proper only to challenge noncompliance with the provisions of Rule 4(b) . . . that deals specifically with the content of the summons." Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004) ("Wright & Miller"). A motion under Rule 12(b)(5) is the "proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Id.* When challenged on these grounds, the plaintiff has the burden of establishing proper service of process. *See Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quoting Wright & Miller § 1083).

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. The plaintiff bears the burden of proof to establish that the court has subject matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). A court may look beyond the complaint to consider "undisputed facts evidenced on the record" to satisfy itself that it has subject matter jurisdiction. *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

## III.    Analysis

The Motion to Dismiss turns on whether the Defendant is either: (1) a "foreign state or political subdivision of a foreign state," covered by 28 U.S.C. § 1608(a); or (2) "an agency or instrumentality of a foreign state," covered by 28 U.S.C. § 1608(b). The Defendant argues that the former applies and that Plaintiff failed to serve the Defendant by any of the methods prescribed by § 1608(a). Memo. in Support of Def.'s Mot. to Dismiss 4. Plaintiff appears to

concede that she did not serve the Defendant using any of the procedures listed in § 1608(a), but she counters that § 1608(b) is the relevant sub-section, making service proper because she served Defendant's registered agent. Pl.'s Memo. of Opposing P. & A. to Def.'s Mot. to Dismiss 4. In particular, § 1608(b) allows for service to be effectuated by "delivering a copy of the summons and complaint . . . to any other agent authorized or appointed by law to receive service of process in the United States." 28 U.S.C. § 1608(b)(2). I agree that § 1608(b) applies and that Plaintiff has met her burden to show that service of process was proper.

To determine whether an entity is a "foreign state or political subdivision of a foreign state" or "an agency or instrumentality of a foreign state," the relevant inquiry is whether the core function of the entity is governmental or commercial. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (describing the approach as "categorical"). If the core function is governmental, then the entity is a foreign state or political subdivision; if the core function is commercial, then the entity is an agency or instrumentality. *Id.* Courts in this circuit have found that a nation's air force, its embassy, its Ministry of Foreign Affairs, and its cities are governmental functions. *See, e.g., id.* at 234-35; *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 150 (D.C. Cir. 1994); *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 33 (D.D.C. 2014); *Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298, 306 (D.D.C. 2005). The Defendant does not argue that its status is as unambiguously governmental as those examples, but rather contends that its function is "governmental in nature." Memo. in Support of Def.'s Mot. to Dismiss 5. This is because the Defendant was created through a presidential decree under a South Korean statute, and its function to "protect, preserve, popularize, and enhance South Korean cultural heritage and develop traditional South Korean life-style and culture . . . serve[s] a national purpose that is traditionally performed by a government." *Id.* The Defendant also

emphasizes that the property has great cultural significance to South Korea. Memo. of P. & A. in Support of Def.'s Reply Memo. 3.

Although the Defendant's interests and objectives may align with, or be directed by, a foreign state, I must look to the "nature" of the act, rather than its "purpose." *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). At its core, the Defendant's act is to build and operate a museum. This is an act that sovereigns may accomplish, but it is not an act that only a sovereign power can do. Museums can be privately built and operated, even if they may be focused on promoting a particular culture or tradition.[2] Whether the Defendant intends to operate the museum for profit also does not impact the inquiry. As the Supreme Court has stated in the context of defining "commercial" for purposes of FSIA, "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the government's particular actions (whatever the motive behind them) are the *type* of actions by which a private party engages in commerce." *Id.* As the Defendant's action—building and operating a museum—is the type of action by which a private party can engage in commerce, the Defendant's act is commercial in nature. *See id.; see also Malewicz*, 362 F. Supp. 2d at 313 ("'Commercial' means only 'not sovereign,' as long as there is some example of private action of a similar type connected with 'trade and traffic or commerce.'"). This makes the Defendant an "agency or instrumentality" of a foreign state

---

[2]  For instance, within the last few months, a private foundation started by the Green family opened "The Museum of the Bible" in this District. Michelle Boorstein, *D.C. Officially Gets A New Major Bible Museum – And Prayers At Its Dedication for Evangelization*, Wash. Post (Nov. 17, 2017), https://www.washingtonpost.com/news/acts-of-faith/wp/2017/11/17/d-c-officially-gets-a-new-major-bible-museum-and-prayers-at-its-dedication-for-evangelization/?utm_term=.fe99bf58b32e.

and service properly accomplished upon delivery of the complaint and summons to an authorized agent. *See* 28 U.S.C. § 1608(b)(2).

Furthermore, the commercial nature of the Defendant's activity defeats its claim of sovereign immunity, as actions "based upon a commercial activity carried on in the United States by the foreign state"[3] are excepted from the jurisdictional immunity of a foreign state. *See* 28 U.S.C. § 1605(a)(2). As courts have recognized, if the activity can similarly be accomplished by a private party, the action is "commercial" within the meaning of FSIA. *See, e.g., Republic of Argentina*, 504 U.S. at 614-15 ("[A] contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods"); *Malewicz*, 362 F. Supp. 2d at 314 ("There is nothing 'sovereign' about the act of lending art pieces, even though the pieces themselves might belong to a sovereign."). In this case, the establishment and operation of a cultural museum, while rooted in policy interests promulgated by the government of South Korea, is an act in which both public and private entities may engage. Therefore, the act is "commercial."

Next, Plaintiff seeks to strike an affidavit submitted in support of the Defendant's notice of removal. Plaintiff argues that the affidavit cannot be accurate because it was signed on March 28, 2017, seven days prior to the filing of the Defendant's notice of removal on April 4, 2017. Plaintiff's Mot. to Strike Affidavit of Soo-Dong O in Support of Def.'s Notice of Removal. The Defendant responds that it initially included the affidavit with its removal notice filed in Superior Court on March 30, 2017, and filed the same affidavit in federal court on April 4, 2017, adding the federal case number assigned. Memo. of P. & A. in Support of Def.'s Opp'n to Pl.'s Mot. to

---

[3] Here, "foreign state" is defined both as a "political subdivision of a foreign state or an agency or instrumentality of a foreign state." *See* 28 U.S.C. § 1603(a).

Strike Affidavit 3. I find that this non-substantive change is not "redundant, immaterial, impertinent, or scandalous" to require striking the affidavit. *See* Fed. R. Civ. P. 12(f) (describing content that would be appropriate to strike from a pleading).

Finally, because the Defendant's Motion to Stay Discovery was based on the Defendant's outstanding dispositive motion, this motion is now moot and should be dismissed.

## IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the Defendant's Motion to Dismiss is DENIED, the Plaintiff's Motion to Strike Affidavit is DENIED, and the Defendant's Motion to Stay Discovery is DENIED as moot. A separate order will issue.

**SO ORDERED.**

Dated: January 2, 2018

TREVOR N. MCFADDEN
United States District Judge